**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BITUMINOUS CASUALTY CORPORATION, | : | CIVIL ACTION NO. 1:07-CV-2287 |
| | : | |
| | : | (Judge Conner) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN W. GLEIM, JR., INC. and CROSSGATES, INC., | : | |
| | : | |
| Defendants | : | |

**<u>MEMORANDUM</u>**

This is an insurance declaratory judgment action filed by plaintiff Bituminous Casualty Corporation ("Bituminous"). Bituminous seeks a declaration that it owes no duty to defend or indemnify defendant John W. Gleim, Jr., Incorporated ("Gleim") in an arbitration proceeding instituted by defendant Crossgates, Incorporated ("Crossgates"). Presently before the court is Bituminous' motion for summary judgment. (Doc. 17.) For the reasons that follow, the motion will be granted.

**I.    <u>Statement of Facts</u>**

Gleim is a construction company that contracted with Crossgates in 1998 to perform site improvements at a manufacturing facility located in Dauphin County, Pennsylvania. (<u>See</u> Doc. 1 ¶ 10; Doc. 5 ¶ 10; Doc. 23, Ex. 1 ¶ 2.) The work was completed in 1999. (Doc. 1 ¶ 11; Doc. 5 ¶ 11.) Three years later, on June 30, 2002, Gleim purchased a general liability insurance policy ("the Policy") from Bituminous. (Doc. 1 ¶ 4; Doc. 5 ¶ 4.) Gleim renewed the Policy annually through June 30, 2006.

(Doc. 1 ¶ 4; Doc. 5 ¶ 4.)  The Policy obligated Bituminous to "pay those sums that [Gleim] becomes liable to pay as damages because of . . . 'property damage'" caused by an "occurrence."  (Doc. 1, Ex. 1 at CG 00 01 10 01.)  In October 2006, Crossgates filed a demand for arbitration, alleging that Gleim "*deceptively and fraudulently covered up* . . . substandard earthwork [in 1998 and 1999] *with an intent that it not be discovered* by Crossgates."  (Doc. 1, Ex. 5 ¶ 20 (emphasis added)).  Bituminous claims that it is not obligated under the Policy to defend Gleim in this arbitration action.  The court will provide a brief background of Crossgates' demand before analyzing Bituminous' position in the above-captioned matter.

A.    **The Crossgates Demand**[1]

The 1998 contract obligated Gleim to restore the earthwork surrounding the manufacturing facility owned by Crossgates.  (See Doc. 23, Ex. 1 ¶ 2.)  Specifically, Gleim was responsible for "Site Improvements including clearing, erosion and sediment control, earthwork, [and] utilities."  (Id. ¶ 16.)  The contract also included a series of plans and specifications, intended to guide the manner in which Gleim conducted its work.  (See id. ¶¶ 16, 20, 25.)  Crossgates claims that the plans and specifications were ignored, and that Gleim not only failed to compact properly the earthwork at the site, but also intentionally concealed its deficient performance, causing Crossgates to remain ignorant of the earthwork's defective condition for

---

[1] In accordance with the legal standard applicable in this case, the court must accept as true the factual allegations of Crossgates' arbitration demand even if such allegations are false or fraudulent.  See infra Part III; see also Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 165 (M.D. Pa. 2007).

several years.  (See id. ¶¶ 20-21.)  In 2004, Crossgates received a report from an

independent architectural firm indicating that the facility's foundation and parking

lot were cracking.  (Id. ¶ 21.)  Repair costs are estimated to exceed $1 million.  (Id.

¶ 42.)

Crossgates filed its demand for arbitration in October 2006.[2]  The demand

avers that "Gleim commenced earthwork operations, but deceptively concealed from

Crossgates the fact that Gleim did not follow the plan and specifications."  (Id. ¶ 20.)

Gleim is accused of "conceal[ing] its shortcuts" and "cover[ing] up [its] substandard

earthwork with an intent that it not be discovered."  (Id. ¶¶ 37, 40.)  Finally,

Crossgates claims that "Gleim is responsible on account of its fraudulent behavior"

for the repair costs incurred to correct its deficient performance.  (Id. ¶ 40.)

---

[2] On April 4, 2008, Crossgates filed a consolidated arbitration demand.  (Doc.
23, Ex. 1.)  With respect to Gleim, the factual allegations contained therein are
substantively identical to those contained in the original demand.  (Compare Doc. 1,
Ex. 5, with Doc. 23, Ex. 1.)  The consolidated demand simply includes an additional
defendant—the Norwood Company—against whom fraud claims are alleged.

B.     **The Above-Captioned Action**

The overarching dispute in the instant matter centers upon the Policy's

liability coverage for "property damage."  The coverage provision reads, in pertinent

part:

>    1.     Insuring Agreement
>
>           a.     We will pay those sums that the insured becomes legally
>                  obligated to pay as damages because of "bodily injury" or
>                  "property damage" to which this insurance applies. . . .
>                  [W]e will have no duty to defend the insured against any
>                  "suit" seeking damages for "bodily injury" or "property
>                  damage" to which this insurance does not apply. . . .
>
>           b.     This insurance applies to "bodily injury" and "property
>                  damage" only if:
>                  (1)    The "bodily injury" or "property damage" is caused
>                         by an "occurrence" that takes place in the
>                         "coverage territory"; . . . .

(Doc. 1, Ex. 1 at CG 00 01 10 01.)  An "occurrence" is defined as "an accident,

including continuous or repeated exposure to substantially the same general

harmful conditions."  (See id.)  Bituminous contends that intentional

misrepresentation, concealment, and fraud are not included within the scope of the

Policy's definition of "property damage."

On December 18, 2007, Bituminous filed a complaint for declaratory

judgment,[3] seeking the court's affirmation that it has no duty to defend or indemnify

---

[3] Bituminous filed its complaint pursuant to the federal Declaratory
Judgment Act, 28 U.S.C. § 2201.

Gleim in the underlying arbitration with Crossgates.[4]  (See Doc. 1.)  Gleim answered the complaint on January 23, 2008, denying Bituminous' interpretation of the Policy. (See Doc. 5.)  On April 29, 2008, Bituminous moved for summary judgment.  (Doc. 17.)  The motion has been fully briefed and is ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See Fed. R. Civ. P. 56(c).  The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

---

[4] In addition to Gleim, Bituminous named Crossgates as a defendant in this matter.  On January 28, 2008, Crossgates moved to dismiss the complaint for its alleged failure to plead a justiciable case or controversy.  (See Docs. 7, 10.)  The court denied this motion on July 1, 2008.  (Doc. 26.)  Crossgates thereafter filed a statement in response to the motion for summary judgment, wherein it stated that "upon consideration of the fact that in this action Plaintiff does not seek any monetary or material relief against Crossgates, . . . Crossgates takes no further position with respect either to Plaintiff's motion for summary judgment or request for declaratory relief."  (Doc. 27 at 1-2.)

III.   **Discussion**[5]

The Declaratory Judgment Act allows a court to declare the rights of parties to an insurance contract, including the extent to which a policy obligates an insurer to defend or indemnify an insured.  See ACandS, Inc. v. Aetna Cas. & Sur. Co., 666 F.2d 819, 822-23 (3d Cir. 1981); Everett Cash Mut. Ins. Co. v. Ins. Co. of Hanover, Civ. A. No. 1:07-CV-0641, 2008 WL 4453113, at *3 (M.D. Pa. Sept. 30, 2008).  In Pennsylvania, the duty of an insurer to defend its insured in a proceeding brought by a third party is resolved "solely from the language of the complaint against the insured."  Kvaerner Metals Div. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006); see also Black, Davis & Shue, 513 F. Supp. 2d at 163.  The coverage determination is thus a question of law to be decided by the court.  Westport Ins. Corp. v. Bayer, 284 F.3d 489, 496 (3d Cir. 2002).

An insurer's duty to defend attaches when the allegations of the complaint against the insured "potentially come[] within the policy's coverage."  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005); see also Britamco Underwriters v. Weiner, 636 A.2d 649, 651 (Pa. Super. 1994).  Even where only a "single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover" on the covered claim.  Penn Nat'l Ins. v. HNI Corp., 482 F. Supp. 2d 568, 607 (M.D. Pa. 2007)

_____

[5] Jurisdiction over the instant action is based on diversity of citizenship, see 28 U.S.C. § 1332, which requires the court to apply Pennsylvania law to the parties' substantive claims, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938); see also Borse v. Pierce Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992).  Neither party disputes the application of Pennsylvania law to this matter.

(quoting <u>Frog, Switch & Mfg. Co. v. Travelers Ins. Co.</u>, 193 F.3d 742, 746 (3d Cir. 1999)).  Conversely, the insurer bears no duty to defend if it can confine the complaint to "recovery that is not within the scope of the coverage."  <u>USX Corp. v. Liberty Mut. Ins. Co.</u>, 444 F.3d 192, 202 n.18 (3d Cir. 2006).

The duty to defend is broader than the duty to indemnify.  <u>Kvaerner</u>, 908 A.2d at 896 n.7; <u>see also</u> <u>Sikirica</u>, 416 F.3d at 225.  Thus, "there may be a duty to defend without a duty to indemnify."  <u>Frog, Switch & Mfg. Co.</u>, 193 F.3d at 746.  However, "[b]ecause the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend."  <u>Sikirica</u>, 416 F.3d at 225; <u>see also</u> <u>Mut. Benefit Ins. Co. v. Haver</u>, 725 A.2d 743, 746 n.1 (Pa. 1999).

To determine whether an insurer has a duty to defend an insured, the court must engage in the following two-step process.  First, the court must determine the proper scope of coverage under the policy.  <u>See</u> <u>Lucker Mfg. v. Home Ins. Co.</u>, 23 F.3d 808, 814 (3d Cir. 1994); <u>see also</u> <u>Britamco</u>, 636 A.2d at 651.  Second, the court must "examine the complaint in the underlying action to determine whether it triggers coverage."  <u>Sikirica</u>, 416 F.3d at 226.  If the court determines that the complaint "avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend."  <u>Id.</u> (citing <u>Gen. Accident Ins. Co. of Am. v. Allen</u>, 692 A.2d 1089, 1095 (Pa. 1997)).

"Traditional principles of insurance policy interpretation" control the first inquiry.  <u>Lucker</u>, 223 F.3d at 814.  The court's primary interpretive goal is to "ascertain the intent of the parties as manifested by the language of the written

instrument." <u>Standard Venetian Blind Co. v. Am. Empire Ins. Co.</u>, 469 A.2d 563, 566 (Pa. 1983).  This court has previously explained that coverage clauses are to be "interpreted broadly so as to afford the greatest possible protection to the insured." <u>Penn Nat'l</u>, 482 F. Supp. 2d at 607; <u>Everett Cash</u>, Civ. A. No. 1:07-CV-0641, 2008 WL 4453113, at *3.  As the Pennsylvania Supreme Court stated in <u>Kvaerner</u>:

> When the language of the policy is clear and unambiguous, we must give effect to that language.  Alternatively, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.

908 A.2d at 897 (internal citations omitted).  Nevertheless, the policy language "must not be tortured to create ambiguities where none exist." <u>Sikirica</u>, 416 F.3d at 220.

Once the policy's coverage has been determined, the court must examine the underlying complaint to ascertain whether its factual allegations trigger coverage. Given the broad nature of the duty to defend, the court must construe the factual allegations of the underlying complaint liberally and resolve all doubts as to coverage in favor of the insured. See <u>Frog, Switch & Mfg. Co.</u>, 193 F.3d at 746; <u>see also</u> <u>Biborosch v. Transamerica Ins. Co.</u>, 603 A.2d 1050, 1052 (Pa. Super. 1992).  This analysis must focus upon the substance of the allegations rather than on "the particular cause of action that a complainant pleads." <u>Erie Ins. Exch. v. Muff</u>, 851 A.2d 919, 926 (Pa. Super. 2004); <u>see also</u> <u>Black, Davis & Shue</u>, 513 F. Supp. 2d at 165. As part and parcel of this analysis, the court is required to accept as true all factual allegations of the underlying complaint because the duty to defend is triggered even

if such allegations are "groundless, false, or fraudulent." Britamco, 636 A.2d at 651

(quoting Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321 (Pa. 1963)).

The Bituminous Policy affords coverage for "property damage" caused by an

"occurrence"; an "occurrence" is defined as an "accident, including continuous or

repeated exposure to substantially the same general harmful conditions."  (Doc. 1,

Ex. 1 at CG 00 01 10 01.)  The Policy provides no definition for the term "accident."

The parties appear to agree, however, that intentional concealment and fraud are

not included within the scope of coverage—a position in accord with Pennsylvania

insurance law.  In Kvaerner, the Pennsylvania Supreme Court interpreted a liability

policy containing language identical to that included in the Policy, and held that an

"accident" was typically an "unexpected and undesirable event."  908 A.2d at 897-98.

Moreover, the court stated: "The key term in the ordinary definition of 'accident' is

'unexpected.'  This implies a degree of fortuity . . . ."  Id. at 898; see also Foremost

Ins. Co. v. Erickson, Civ. A. No. 07-0195, 2007 WL 2301119, at *4 (E.D. Pa. Aug. 7,

2007) ("Pennsylvania courts have defined accident as a fortuitous, untoward or

unexpected happening." (internal quotations and citations omitted)); State Farm

Fire & Cas. Co. v. Czop, No. Civ. A. 02-1048, 2004 WL 632724, at *5 (E.D. Pa. Feb. 11,

2004) (same); Allstate Ins. Co. v. Fischer, No. 97-4806, 1998 WL 205693, at *3 n.3 (E.D.

Pa. Apr. 28, 1998) (same).

Furthermore, both Pennsylvania state courts and federal courts applying

Pennsylvania law have held that intentional acts, including intentional

misrepresentations, are not covered as "occurrences" under a general liability

insurance policy.  See <u>Sclabassi v. Nationwide Mut. Fire Ins. Co.</u>, 789 A.2d 699, 703

(Pa. Super. 2001) ("Intentional acts are not 'occurrences.'"); <u>see also</u> <u>Jerry Davis, Inc.</u>

<u>v. Md. Ins. Co.</u>, 38 F. Supp. 2d 387, 392 (E.D. Pa. 1999) ("Intentional acts such as

misrepresentation are not covered as an occurrence under policies of liability

insurance."); <u>United States Fid. & Guar. Co. v. Korman Corp.</u>, 693 F. Supp. 253, 258

(E.D. Pa. 1988) ("Intentional acts, including intentional misrepresentations, are not

'accidents' and thus not 'occurrences.'"); <u>United Nat'l Ins. Co. v. St. Paul</u>

<u>Reinsurance Co.</u>, Civ. No. 1:CV-07-2092, 2008 WL 4671780, at *4 (M.D. Pa. Oct. 17,

2008) ("An intentional act is not a covered 'occurrence' under a liability policy

because it is not an accident."); <u>Gene & Harvey Builders v. Pa. Mfrs' Associated Ins.</u>

<u>Co.</u>, 517 A.2d 910, 913 (Pa. 1986) (holding that both intentional concealment and

intentional misrepresentation "are not 'occurrences' under [a general liability

policy], for an intentional act is not an accident (and only accidents are covered).").

In light of well-established case law interpreting identical policy provisions, the

court finds the Bituminous Policy language unambiguous:  intentional acts,

including intentional misrepresentation and fraud, are excluded from the scope of

the Policy coverage.

        The court must now turn to Crossgates' demand for arbitration and

determine whether the factual allegations contained therein trigger the Policy's

coverage.  Bituminous contends that the averments within the demand "leave no

doubt but that the insured has been sued for intentional fraud. . . . There is no

allegation that the insured was negligent, or merely should have known that its

10

earthwork was deficient." (Doc. 18 at 10.)  The court has examined the arbitration

demand and it is clear that the factual allegations do not trigger coverage.  The

demand states that "Gleim commenced earthwork operations, but *deceptively*

*concealed* from Crossgates the fact that Gleim did not follow the plans and

specifications." (Doc. 23, Ex. 1 ¶ 20 (emphasis added)).  Gleim purportedly

> *concealed* and *covered up* [its] non-compactive effort, its uncontrolled
> 3 foot lifts, its uncompacted voids, its lack of documentation of types
> of soils used for fill, its lack of soil density testing documentation, its
> non-use of geogrids or earth benches, and its failure to perform
> earthwork consistent with the requirements of contract specifications.
> . . . None of these *concealed* failures were to be discovered until it was
> reported to Crossgates that the building was settling and required
> rehabilitation to correct the existing settlement and to prevent future
> damage.

(Id. ¶ 37 (emphasis added)).  Finally, Crossgates' demand requests compensation

because "Gleim *deceptively* and *fraudulently covered up* [its] substandard earthwork

with an intent that it not be discovered by Crossgates."  (Id. ¶ 40 (emphasis added)).

In this fashion, Crossgates' allegations set forth claims seeking redress for

intentional misconduct, concealment, and fraud, none of which constitutes an

"occurrence" under the Policy.

Gleim responds by identifying two allegations in Crossgates' arbitration

demand that purportedly sound in negligence.  (See Doc. 22 at 5-6.)  According to

Gleim, acts of negligence are by definition unintentional and accidental; thus,

Bituminous is obliged to defend if Crossgates' demand contains at least "some

allegations that *arguably may* invoke coverage."  (Id. at 5 (emphasis added)).  The

first highlighted allegation asserts that "geogrid and/or earth benches were ignored

11

by Gleim." (Id. at 5 (quoting Doc. 23, Ex. 1 ¶ 36)). This averment is quoted accurately, but out of context. The actual demand clarifies: "The ignoring [sic] of these recommendations [regarding geogrid an/or earth benches] was not brought to Crossgates' attention during earthwork operations by Gleim, which it is asserted, was further evidence of Gleim's *cover-up* . . . ." (Doc. 23, Ex. 1 ¶ 36 (emphasis added)). Read in context, Crossgates' allegation sounds in intentional misrepresentation, concealment, or fraud. The claim is not simply that Gleim's performance was inadequate, but that Gleim camouflaged its deficient performance with calculated subterfuge, causing Crossgates to remain ignorant of the alleged deficiencies.

The second allegation purportedly averring negligent behavior reads: "The lack of control of the fill materials composition by Gleim and the placement of materials with inadequate compaction by Gleim directly under the foundation and structural slab area and the parking lot that is settling is a direct cause of the settlement." (Doc. 22 at 5-6 (quoting Doc. 23, Ex. 1 ¶ 40)). Again, Gleim quotes the averment accurately, but omits context. Crossgates' actual demand continues, "Gleim *deceptively* and *fraudulently covered up* this substandard earthwork with an intent that it not be discovered by Crossgates." (Doc. 23, Ex. 1 ¶ 40 (emphasis added)). Read in context, this allegation also asserts a claim of intentional misrepresentation, concealment, or fraud.

Notwithstanding Gleim's interpretive efforts, Crossgates' allegations perspicuously sound in intentional acts; intentional acts of misrepresentation,

concealment, and fraud do not constitute "occurrences" under the Policy.  To the

extent that Crossgates identifies performance falling below that required by the

contract, it does so merely to describe activity that Gleim purportedly concealed.

Bituminous therefore has no duty to defend or indemnify Gleim against the

allegations contained within Crossgates' arbitration demand.[6][7]  Summary judgment

is appropriate.

---

[6] "Because the duty to defend is broader than the duty to indemnify, there is
no duty to indemnify if there is no duty to defend."  Sikirica, 416 F.3d at 225; see
also Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. 1997).
Bituminous has no duty to defend against Crossgates' arbitration demand and,
consequently, also has no duty to indemnify.

[7] Gleim's brief in opposition also proffers the following argument regarding
Bituminous' duty to defend: even if the allegations of Crossgates' arbitration
demand seek recovery for purely intentional acts, an arbitrator may nonetheless
ground an arbitral award on Gleim's negligent performance.  This mere possibility
requires Bituminous to provide a defense. (See Doc. 22 at 7-11.)  Gleim's argument
lacks any basis in Pennsylvania law.  An insurer's duty to defend is not affected by
the remote possibility that an arbitrator will go beyond the face of the arbitration
demand in imposing an award.  Moreover, "the nature of the allegations contained
in the complaint control whether an insurer must defend a policyholder."  Scopel,
698 A.2d at 605.  This court is not permitted to speculate on theories which would
require it to leap beyond the four corners of the arbitration demand, and Gleim
cites no case law to the contrary.

**IV.**    <u>**Conclusion**</u>

In accordance with the foregoing discussion, the court declares that
Bituminous has no duty to defend or indemnify Gleim in the Crossgates arbitration.
Intentional misrepresentation, concealment, and fraud simply do not constitute an
"occurrence" under the Policy.  The court will therefore grant Bituminous' motion
for summary judgment.

An appropriate order will issue.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        February 24, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BITUMINOUS CASUALTY** | : | **CIVIL ACTION NO. 1:07-CV-2287** |
| **CORPORATION,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN W. GLEIM, JR., INC.** and | : | |
| **CROSSGATES, INC.,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, this 24th day of February, 2009, upon consideration of plaintiff's

motion (Doc. 17) for summary judgment, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.     Plaintiff's motion (Doc. 17) for summary judgment is GRANTED.

2.     The Clerk of Court is directed to enter JUDGMENT for plaintiff
       Bituminous Casualty Corporation and against defendants John W.
       Gleim, Incorporated and Crossgates, Incorporated, with respect to all
       claims.

3.     The Clerk of Court is directed to CLOSE this case.


                                    S/ Christopher C. Conner
                                    CHRISTOPHER C. CONNER
                                    United States District Judge